United States Court of Appeals,

Eleventh Circuit.

No. 96-8058.

VISITING NURSE HEALTH SYSTEM, INC. f.k.a. Visiting Nurse
Association of Metropolitan Atlanta, Inc., Petitioner—Cross-
Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent—Cross-Petitioner,

and

United Food and Commercial Workers, Local No. 1996, Intervenor.

March 31, 1997.

Petition for Review and Cross-Application for Enforcement of an
Order of the National Labor Relations Board.

Before COX, Circuit Judge, KRAVITCH, Senior Circuit Judge, and
STAGG[*], Senior District Judge. (No. NLRB 10-CA-27847).

STAGG, Senior District Judge:

In the proceedings below, the National Labor Relations Board
("NLRB" or the "Board") held that the vote of Staff Nurse Iris Mead
should not be counted in the union election and held that Visiting
Nurses Health System, Inc. ("VNHS") untimely raised the issue of
whether its staff nurses are supervisors under *NLRB v. Health Care
& Retirement Corp.,* 511 U.S. 571, 114 S.Ct. 1778, 128 L.Ed.2d 586
(1994). Petitioner/Cross-Respondent, VNHS, petitions for review of
the Board's decisions. Respondent/Cross-Petitioner, the Board,
seeks enforcement of its decision that VNHS and United Food and
Commercial Worker's Local 1063 are ordered to collectively bargain.
Based on the following reasons, the Board's order is enforced.

---

[*]Honorable Tom Stagg, Senior U.S. District Judge for the
Western District of Louisiana, sitting by designation.

*I. PROCEDURAL HISTORY AND FACTS*

A. Procedural History

On December 18, 1992, an election was conducted among staff nurses at VNHS to determine whether the nurses wished to be represented by United Food and Commercial Worker's Local Union No. 1063 (the "Union"), by the Georgia Nurses Association, Inc. ("GNA"),[1] or by no union at all. The count of the vote revealed that 43 votes were cast for the Union, one vote was cast in favor of GNA, and 40 votes were cast in favor of having no union representation. Two of the votes cast were considered challenged votes. Staff Nurse Iris Mead's ("Mead") vote was challenged because it was cast after the poll had closed.

The Board's Regional Director conducted an investigation of the challenged votes and on January 29, 1993, issued a report finding that one of the parties, VNHS itself, unintentionally interfered with Mead's voting. Thus, the Regional Director concluded that Mead's vote should be counted because the unintentional interference constituted an "extraordinary circumstance" under *Monte Vista Disposal Co.,* 307 N.L.R.B. 531, 1992 WL 110678 (1992). The Union filed an exception to this ruling and a hearing was held on the matter on July 14, 1993, before an NLRB Hearing Officer. On August 25, 1993, the Hearing Officer issued a report agreeing with the Regional Director's findings and conclusions and recommended that Mead's ballot be opened and counted.

---

[1]At the time of the election, GNA was representing the staff nurses.

On September 8, 1993, the Union filed exceptions to this ruling with the NLRB, and VNHS responded to the Union's exceptions. The Board issued its decision on July 18, 1994. *See Visiting Nurses Association of Metropolitan Atlanta, Inc. and United Food and Commercial Workers, Local Union No. 1063,* 314 N.L.R.B. 404, 1994 WL 377055 (1994). The Board adopted the factual findings of the Hearing Officer. However, the Board reached a different conclusion ruling that Mead voted late due to her own actions rather than due to any extraordinary circumstances. Finding that the election was conclusive and that the Union gained a majority of the unit at VNHS, the Board ordered VNHS to collectively bargain with the Union. VNHS refused to do so and, by way of correspondence to the Union, expressed three reasons for its refusal: (1) the Board decision was in error and therefore the Union was not properly certified; (2) under *Health Care,* the staff nurses were supervisors and could not be the subject of an NLRB certification; and (3) the unit expressly excludes supervisors such as the staff nurses, and thus, there were no employees in the certified unit.

On August 11, 1994, the Union filed an unfair labor practice charge, alleging that VNHS had illegally refused to bargain with it in violation of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act (the "Act"). General Counsel for the NLRB subsequently filed a motion for summary judgment, which VNHS opposed. On December 8, 1995, the Board granted the motion for summary judgment, finding that VNHS had illegally refused to bargain with the Union. *See Visiting Nurse Health System, Inc.*

*f/k/a Visiting Nurses Association of Metropolitan Atlanta, Inc.,*
319 N.L.R.B. 899, 1995 WL 732846 (1995).  The Board rejected VNHS's
claim that *Health Care* had any affect on the proceeding, stating
that VNHS was barred from raising the issue because it was raised
untimely.  *Id.* at 899 n. 1.[2]

B. Facts Surrounding Mead's Vote

The polls were open at VNHS's facilities for the December 18,
1992 election from 7:30 to 10:00 A.M.  On that day, Mead had to
conduct a blood sugar test on a patient and had to deliver the
blood sample to the laboratory that same morning for testing.  Mead
left the patient's house at approximately 7:50 A.M., visited one or
two more patients, and drove to the laboratory to deliver the blood
sample.  Mead then drove directly from the laboratory to VNHS's
Lawrenceville, Georgia facility.  Mead testified that she arrived
in the parking lot at approximately 9:45 or 9:50 A.M.  Just as she
was entering the parking lot, Mead was paged on her pager by her
supervisor.  Mead's personal practice was to answer her page as
soon as possible.  There was not a policy in place at VNHS,
however, that required staff nurses to answer their pages as soon
as possible, nor was there any indication on Mead's pager that this
page constituted an emergency.

---

[2]This court does not reach the issue of whether staff
nurses, who individually provide nursing services to patients in
their homes, are supervisors under *Health Care.*  The court agrees
with the Board in *Visiting Nurse Health System,* 319 N.L.R.B. at
899 n. 1.  VNHS never raised the issue of the supervisory status
of its staff nurses in the representation proceeding.  Thus, VNHS
is barred from raising the issue before the Board and before this
court on appeal.  *See Flatbush Manor Care Center,* 314 N.L.R.B.
702, 703 n. 4, 1994 WL 424153 (1994);  *HeartShare Human Services
of New York,* 317 N.L.R.B. 611 n. 1, 1995 WL 321741 (1995).

When Mead entered the building, she reported to her supervisor regarding her page. During a short conversation with her supervisor, Mead was asked if she had voted, to which Mead responded that she had not. Mead's supervisor then told Mead she could go vote. After this conversation, Mead went to her desk to put her things down. Mead's testimony shows that she may have spoken with a few co-workers, or as the Board found, "chit-chatted" with co-workers. It was after this that Mead went to the polling place to vote. Very shortly prior to Mead's arrival at the voting room, the ballot box had been closed and sealed. Although there was a dispute about the exact time of the poll's closing[3], Mead was allowed to vote but she was told by the Board agent that her vote would be considered a challenged vote. Mead responded that "if it [voting] had been important to me I would have been [t]here." *Visiting Nurses Association,* 314 N.L.R.B. at 404. Mead also testified that voting "was not my priority of the day. It did not matter a whole lot to me whether I voted or not." *Id.* at 404 n. 4. Mead then marked her ballot and the ballot box was re-sealed.

## II. STANDARD OF REVIEW

Traditionally, we accord considerable deference to the Board's expertise in applying the National Labor Relations Act to the labor controversies that come before it. *N.L.R.B. v. Deauville Hotel,* 751 F.2d 1562, 1567 (11th Cir.1985), citing *N.L.R.B. v. Denver Building and Construction Trades Council,* 341 U.S. 675, 692,

---

[3]The question of whether Mead was actually late to the poll, or the question of how late she was, depending on who's watch controls, is not an issue on appeal. The only issue is whether Mead's excuse can be said to be an extraordinary circumstance.

71 S.Ct. 943, 953, 95 L.Ed. 1284 (1951). "We must examine its decisions to ensure that its statutory interpretation has a reasonable basis in law ... and that a reasonable balance has been struck between competing policies." *Deauville Hotel,* 751 F.2d at 1567. We are bound by the Board's findings of fact if they are supported by substantial evidence on the record as a whole. *See N.L.R.B. v. Hayden Electric, Inc.,* 693 F.2d 1358, 1362 n. 4 (11th Cir.1982); *Georgia Kraft Co. v. N.L.R.B.,* 696 F.2d 931, 936 (11th Cir.1983). If the Board does not discredit the testimony considered by the Hearing Officer, but rather rejects the Hearing Officer's conclusions as to the inferences to be drawn from the testimony, such a disagreement between the Board and the Hearing Officer on factual inferences and legal conclusions does not detract from the substantiality of the evidence that must support the Board's decision. *See Georgia Kraft,* 696 F.2d at 937. Nor does it modify the appropriate standard of review in the appellate court. *Id.*

## III. DISCUSSION

The issue this court must determine is whether Mead's reasons for arriving late to the poll on December 18, 1992, were due to "extraordinary circumstances."

In *Monte Vista,* the employees arrived late to vote and provided no reason for their tardiness. The Board in *Monte Vista,* provided little guidance as to what constituted an extraordinary circumstance. The Board did, however, state that an extraordinary circumstance "shall include a showing that one of the parties was responsible for the tardiness of the late-arriving voter or

voters." *Id.* at 533 n. 6. The Board in *Monte Vista,* did not find that the employees were late due to extraordinary circumstances. *See id.* at 534.

In *The Glass Depot,* 318 N.L.R.B. 766, 1995 WL 518710 (1995), the Board was not required to determine whether a snow storm that caused 4 of 19 employees to miss a vote was an extraordinary circumstance because a representative portion of the employees attended the vote. The Board did say, however, that the snow storm "may well have been" an extraordinary circumstance. *Id.* at 767.

The cases above contemplate situations beyond one's control as constituting an extraordinary circumstance under *Monte Vista.* Mead's failure to vote timely at VNHS was not due to circumstances beyond her control. Rather, her tardiness was due to her own actions on that morning. Mead could have made sure that she arrived with plenty of time to vote despite being confronted with minor setbacks. Mead simply tried to accomplish too many tasks that morning, and this caused her to arrive late to the poll. This court does not find that the reasons articulated on the record by Mead constitute an extraordinary circumstance. The Board's decision is supported by substantial evidence, and thus, is entitled to enforcement.

The order of the Board granting judgment in favor of the NLRB is ENFORCED. Furthermore, the order of the Board ordering VNHS to collectively bargain with the Union is ENFORCED.